IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW SMITH and LISA SMITH, Husband and Wife, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| CONAIR CORPORATION, | ) ) |
| Defendant. | ) |

8:03CV277

MEMORANDUM AND ORDER

Before the court is defendant's motion in limine/motion for summary judgment (filing no. 40). The court, having considered the motion, the plaintiffs' response, the defendant's reply, and the relevant materials and law, now determines that the defendant's motion in limine and motion for summary judgment should be denied.

**Undisputed Facts**

On the morning of September 5, 2000, a fire started in one of the bedrooms of plaintiffs Andrew and Lisa Smith's house. *See* Nebraska State Fire Marshals Office Supplemental Report at 1-2 , Exhibit B (filing no. 43). The bedroom belonged to the plaintiffs' teenage daughter, Nicole. The fire eventually spread beyond Nicole's bedroom and the house completely burned down. Fortunately for the plaintiffs, they and their children were not at home at the time the fire occurred. The Fremont, Nebraska, Fire Department responded to the fire, along with Mr. Ken Scurto of the Nebraska State Fire Marshal's Office.

Mr. Scurto determined that the fire originated in Nicole's basement bedroom, and in particular, in the southeast corner of the bedroom near a glass top table. *Id.* Mr. Scurto's report indicated that, in the outlet beneath the glass top table, there were two

appliances plugged in – a hair dryer and a curling iron. *Id.* Mr. Scurto indicated that the curling iron may have been on at the time of the fire. In his report, Mr. Scurto also indicated that the remains from the fire showed that it had originated at the table top height. *Id.* Mr. Scurto determined "that after the fire had burned a short time on top of the table, the table failed, causing the fire to extend down to floor level and continue to burn." *Id.* Mr. Scurto also determined that "[b]ased on the materials that we found on the floor, it appeared that the only two possible sources of ignition that were present would have been the hair dryer which had been plugged into an outlet beneath the table, as well as the curling iron plugged into the same outlet." *Id.* Mr. Scurto added: "[b]ased on my observations and information received during this investigation, it appears that either a malfunction involving the curling iron in Nicole Smith's bedroom caused the fire or possibly the device got left on and the automatic shut off did not activate." *Id.* He stated that "the curling iron appears to be the source of ignition and appears to have ignited some cloth materials that were also on top of the table at the time." *Id.* According to him, "[o]nce the combustibles on the table top were ignited, the fire was able to spread through the rest of the combustibles in the room, causing the damage that occurred." *Id.*

A couple of days after the fire, on September 7, 2000, Mr. Larry Kappel of American Family Mutual Insurance Company investigated the fire scene. *See* Investigation Report of Larry Kappel, Exhibit E (filing no. 43). Mr. Kappel collected parts of both the hair dryer and the curling iron from the fire scene and sent them to OnSite Engineering, a forensic engineering firm, on September 8, 2000. *See* Expert Report of Larry Kappel, Exhibit F (filing no. 43). Mr. Kappel, however, did not locate the switches from the hair dryer. *See*

2

Kappel's Deposition 51:5-17, Exhibit G (filing no.43).  On February 6, 2001, Mr. Todd J. Hartzler of OnSite Engineering concluded in his report that the fire originated within the hair dryer.  *See* Expert Report of Larry Kappel, Exhibit F (filing no. 43).  Specifically, in his report, Mr. Hartzler stated: "It is further my opinion that the fire was caused by an electrical failure internal to the hair dryer." *Id.*  Mr. Hartzler recommended to Mr. Kappel that Conair be contacted for further testing.[1] *Id.*

Approximately a year after the fire, on August 29, 2001, Mr. Kappel contacted Conair.  *See* Kappel's Deposition 151:7-18, Exhibits D (filing no. 43).  After contacting Conair, Mr. Hartzler conducted further testing.  *See* Hartzler's Deposition 50:14-25, Exhibit G (filing no. 43).  Mr. Hartzler concluded that the hair dryer caused the Smiths' fire.  *See* Hartzler's Deposition 135:24 - 136:5, Exhibit G (filing no. 43).  Mr. Hartzler offered three theories: (1) that the hair dryer switch malfunctioned due to wear and tear over time because the switch was turned on and off many times (Hartzler's Deposition 196:4 -198:9, Exhibit G (filing no. 43)); (2) that the solder connecting the wires to the hair dryer switch was poor, causing heat to build up at the connection point and eventually causing the solder malfunction (Hartzler's Deposition 210:2-20, Exhibit G (filing no. 43)); and (3) that the wires leading into the hair dryer were damaged during assembly, causing the wires to lose their integrity and ultimately short-circuit (Hartzler's Deposition 215:7-218:4, Exhibit G (filing no. 43)).  Mr. Hartzler, however, concedes that his ability to validate his theories is limited because essential parts of the wiring and the switch are missing.  See Hartzler's Depositon 242:4-25, Exhibit G (filing no. 43).

---

[1] Defendant's expert indicated that, within a reasonable degree of certainty, the hair dryer was a Conair hair dryer.  *See* Natale's Deposition 57:18-25, Exhibit L (filing no. 43).

On June 9, 2003, plaintiffs filed this lawsuit against Conair in state court. However, pursuant to 28 U.S.C. §§ 1441 and 1446, Conair removed this case to federal court on July 17, 2003. In their lawsuit, the plaintiffs claim damages under a theory of strict liability, implied warranty of fitness, and negligence. Conair has responded with the instant motion seeking to exclude the testimony of Mr. Hartzler and for summary judgment. Specifically, Conair argues that Mr. Hartzler's testimony is unreliable. In addition, Conair argues that the expert testimony should also be excluded under a theory of spoilation. Conair claims that plaintiffs destroyed evidence; thus, their expert testimony should also be excluded for that reason. Based on these arguments, Conair seeks summary judgment. The plaintiffs oppose Conair's motion, arguing that Mr. Hartzler's testimony is reliable and relevant and that Conair's argument of spoilation is unfounded. They request that Conair's motion for summary judgment be denied. The court now examines whether Mr. Hartzler's testimony is reliable.

## Reliability of the Expert Testimony

In light of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), this court must screen proffered expert testimony for relevance and reliability. *See Blue Dane Simmetal Corp. v. American Simmental Ass'n,* 178 F.3d 1035, 1040 (8th Cir. 1999). Serving in the role of gatekeeper, the court ensures that a particular expert has sufficient specialized knowledge to assist jurors, and limits such testimony so that it remains within the scope of the witness' established expertise. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 715 (8th Cir. 2001). A reliable opinion must be based on scientific

4

methodology, not subjective belief or unsupported speculation. *See United States v. Rouse,* 100 F.3d 560, 567 (8th Cir. 1996). Furthermore, the expert's information or opinion must "assist" the trier of fact to understand or determine a fact in issue. *Id.*

Fed. R. Evid. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *See* Fed. R. Evid. 702. To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to "knowledge, skill, experience, training, or education." *Id.* If a witness is qualified as an expert on a relevant topic, the court must also evaluate the reliability of the methodology employed by the expert in formulating the proposed opinions. *Jaurequi v. Carter Manufacturing Co., Inc.,* 173 F.3d 1076, 1082 (8th Cir. 1999). A trial court must be given wide latitude in determining whether an expert's testimony is reliable. *See Kumho Tire,* 526 U.S. at 152.

In this case, Conair contends that the plaintiffs' expert, Mr. Hartzler, should be precluded from testifying because his theories as to why the hair dryer started the fire are based on speculation. The defendant asserts that the plaintiffs' expert testimony is unreliable under *Daubert*; thus, it should be excluded. The court does not agree with the defendant for two reasons. First, Mr. Hartzler is qualified as an expert because he is a licensed professional engineer with a master's degree in electrical engineering, has worked for a forensic engineering firm, and had approximately two years of experience in the engineering field when he conducted his services for American Family Insurance. *See*

Hartzler's Deposition 5:11-8:24 Exhibit G (filing no. 43). Second, Mr. Hartzler has an explanation, based on testing, as to why it is possible that the hair dryer could have caused the fire. *See* Hartzler's Deposition 49:14-50:25 Exhibit G (filing no. 43).

Specifically, Mr. Hartzler has three theories which explain how the hair dryer started the fire. These theories, as previously indicated, are: (1) that the hair dryer switch malfunctioned due to wear and tear over time because the switch was turned on and off many times; (2) that the solder connecting the wires to the hair dryer switch was poor, causing heat to build up at the connection point and eventually causing the solder malfunction; and (3) that the wires leading into the hair dryer were damaged during assembly, causing the wires to lose their integrity and ultimately short-circuit. Mr. Hartzler bases these theories on his observation of arcing on the hair dryer cord and on three tests he conducted. *See* Hartzler's Deposition 49:14-50:25, Exhibit G (filing no. 43). According to Mr. Hartzler, the electrical arcing is indicative that the hair dryer caused the fire. *See id.* and Expert Report of Larry Kappel at 2, Exhibit F (filing no. 43). Mr. Hartzler has identified the source of ignition within the hair dryer and conducted tests to demonstrate that the composition of the hair dryer was capable of serving as a fuel source. *See* Hartzler Deposition 184:5-185:24, Exhibit G (filing no. 43). Mr. Hartzler's testimony is not based on subjective belief or speculation and it will assist the trier of fact to understand or determine whether or not the hair dryer started the fire.

Based on the testimony by Mr. Hartzler, the court determines that his expert testimony and theories satisfy the Supreme Court's standard of reliability set under *Daubert* and *Kumho.* Therefore, Mr. Hartzler's expert testimony will be admitted.

In the alternative, Conair also argues that the expert testimony should also be excluded under a theory of spoilation. Conair claims that American Family Insurance, the plaintiffs' home insurer, destroyed evidence. Specifically, Conair claims that the fire scene was destroyed and that the hair dryer switch was not preserved. According to Conair, the plaintiffs' expert testimony should also be excluded for that reason. However, a claim under a theory of spoilation requires evidence suggesting that a party acted in some manner to destroy or suppress evidence. *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 267 (8th Cir. 1993). Here, the record falls short from showing that either American Family Insurance or the plaintiffs somehow destroyed the hair dryer switch or any other evidence in connection with this case. Conair's spoilation argument is without merit. Accordingly, the plaintiffs' expert testimony will be admitted. The court now examines whether Conair is entitled to summary judgment.

### Summary Judgment

Summary judgment is proper "if pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth

specific facts that demonstrate the existence of a genuine issue for trial.  *Id.*  Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial.  *Id.*  To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleading alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue.  *Id.*

Having already determined that plaintiffs' expert's testimony is admitted under the Supreme Court's standards set in *Daubert* and *Kumho*, the court determines that there are genuine issues of material fact with respect to whether the hair dryer started the fire in the plaintiffs' home.  Accordingly, the court determines that Conair is not entitled to summary judgment.

IT IS HEREBY ORDERED that the defendant's motion in limine/motion for summary judgment (filing no. 40) is denied.

DATED this 7th day of October, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge